IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BARKER,

        Plaintiff,                  No. CIV S-08-1160 WBS CKD P

  vs.

SUSAN L. HUBBARD, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner proceeding with counsel with claims arising under the Americans with Disabilities Act (ADA) for damages.[1] The remaining defendants, the California Department of Corrections and Rehabilitation (CDCR) and the State of California, have filed a motion for summary judgment. Oral argument was heard with respect to the motion on April 11, 2012.

/////

/////

/////

---

[1] Plaintiff also brings claims under the Rehabilitation Act, 42 U.S.C. § 794. The rights conferred by the ADA and the Rehabilitation Act are essentially the same. Zuke v. Regents of University of California, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)

1

I. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Plaintiff's ADA claim arises under Title II of the ADA. In order to prevail on claim arising under Title II, plaintiff must show: 1) he is an individual with a disability; 2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or activities; 3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and 4) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Also, to recover money damages under Title II, a plaintiff must prove that he was discriminated against intentionally. Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001). In order to prove intentional discrimination, a plaintiff must show: 1) that a public entity had knowledge that a violation of his rights under the ADA was substantially likely to

occur; and 2) at a minimum, the public entity failed to act. Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002). The first element of the "deliberate indifference" test is satisfied if the public entity has notice that an accommodation under the ADA is required. Id. The second is satisfied if the entity's failure to act is a result of conduct that is more than negligent and involves an element of deliberateness. Id. The acts of an employee of a public entity are generally deemed acts of the public entity for purposes of this analysis. See Anthony v. City of New York, 339 F.3d 129, 141 (2d Cir. 2003) (allegations of discrimination by New York City police officers are allegations of discrimination by the City of New York for purposes of Title II of the ADA).

II. Plaintiff's Motion For Summary Judgment

Plaintiff has already moved for summary judgment on his ADA claim. That motion was denied on February 17, 2012. Plaintiff adopts the evidence presented with respect to his motion for summary judgment in opposition to defendants' motion. In addressing plaintiff's motion, the court made the following findings on January 18, 2012:

> B.   Factual Background
>
> The following material facts, unless otherwise indicated, are undisputed or are not reasonably subject to dispute. Plaintiff, 46, fractured his right hip in a car accident in 1997. While the fracture was repaired, plaintiff still suffers from what he calls "progressive" pain in his hip and back. On May 25, 2005, plaintiff was identified by prison staff as being "mobility impaired." Mot. Summ. J., App. 2. Staff noted on a "Disability Program Verification Form" that plaintiff required a lower bunk, a wheelchair accessible path of travel and that he not be forced to climb stairs. Further, staff noted that plaintiff did not require a wheelchair while in his cell, but should be allowed to use one outside of his cell or be allowed to use a walker. Medical records from July, 2007, shortly after the events relevant to the claims before the court took place, indicate that plaintiff could occasionally stand up, and could walk a few steps with the help of a cane. Opp'n, Ex. C.
>
> In May, 2006, plaintiff was moved from the "Y" dorm at the California Medical Facility (CMF) to the "U" dorm.[2] The "Y" dorm has a shower plaintiff accessed with a wheelchair. However, the "U" dorm shower was not accessible with a wheel chair

---

[2] There is no indication as to the reason for plaintiff's move.

because it had an approximately six-inch high threshold blocking the entrance.³  Also, once over the threshold, plaintiff had to walk at least five steps, and then go down another step to enter the place where he would actually shower.

Plaintiff asserts he immediately complained to certain correctional officers, who are not a party to this motion, advising them that the six-inch threshold posed a problem for him because he could not traverse the obstruction in a wheelchair.  Mot. Summ. J., App. 44. Despite plaintiff's complaints, plaintiff remained in the "U" dorm. Defendants dispute that plaintiff notified correctional officers of his difficulties with the "U" dorm shower prior to December, 2006. There is no record of plaintiff's complaints other than his testimony.  Indeed, although CDCR has a formal procedure for inmates to request accommodations under the ADA, plaintiff made no such request as to the condition of the "U" dorm shower until January 20, 2007.  Id., App. 22.  According to plaintiff, that request was lost so he resubmitted it on July 5, 2007 after he had been transferred out of "U" dorm.  Id.

On December 27, 2006, plaintiff attempted to utilize the "U" dorm shower and tripped and fell over the threshold, sustaining injuries.⁴ Plaintiff submitted a grievance concerning his fall the same day seeking medical care and asking that the six-inch threshold be "jack hammered."  Id., App. 14.  While this grievance was pending, plaintiff received treatment for his fall from Dr. Saukhla. Decl. of N. Saukhla at 3.  During this visit, plaintiff did not indicate to Dr. Saukhla that he was having difficulty showering. Id.  On January 20, 2007, while this grievance was still pending, plaintiff tripped over the threshold a second time.  Plaintiff received medical care following the second fall on January 22, 2007.  Decl. of N. Saukhla, Ex. B. at 2.  The doctor who treated plaintiff recommended that given plaintiff's history of falls, he use a front wheel walker rather than a cane when he walks.  Id. Plaintiff indicated he did not want to use a front wheel walker.  Id.

In response to the grievance submitted December 27, 2006, on February 14, 2007 Chief Medical Officer Andreasen ordered that

---

³ Pictures of the "U" dorm shower appear at appendices 7-13 attached to plaintiff's motion for summary judgment.  It appears that the purpose of the threshold is to keep water from the shower area from flowing into the hallway.

⁴ Plaintiff testified at his deposition that sometimes he obtained help from other inmates to access the "U" dorm shower, but sometimes he was not able to obtain assistance.  Id., App. 51. He also indicated that while housed in "U" dorm there were times when certain correctional officers would let plaintiff shower in "Y" dorm.  Id.  In an interview concerning plaintiff's December 27, 2006 grievance, plaintiff indicated that on December 27, he thought he could traverse the threshold and shower without assistance.  Id., App. 16.

5

"plant operations" review plaintiff's request that the threshold be removed. Mot. Summ. J., App. 16.

Dissatisfied with Andreasen's response, plaintiff appealed the decision on March 13, 2007 noting that there was nothing in the decision which would solve plaintiff's immediate problem because getting in and out of the shower was a "struggle" for him. Id., App. 15. Plaintiff's appeal was granted on April 9, 2007. Id., App. 17-18. The order granting the appeal indicated that plaintiff had already been transferred out of the "U" dorm and back to the "Y" dorm. Id. Plaintiff asserts he was transferred back to the "Y" dorm sometime in March, 2007. Plaintiff asserts no difficulties in accessing the "Y" dorm shower.

C.    Analysis

Essentially, whether plaintiff's motion for summary judgment should be granted turns on whether there is any genuine factual dispute that defendants, at some point, were on notice that plaintiff's being forced to use the "U" dorm shower was at least substantially likely to result in a violation of plaintiff's rights under the ADA. As indicated above, it is not clear who made the decision to transfer plaintiff to "U" dorm from "Y" or why. Therefore, it is not clear that the person who transferred plaintiff was aware of the condition of the "U" dorm shower or that plaintiff was unable to utilize that shower on his own. While the evidence before the court suggests that a correctional officer with the authority to transfer plaintiff would be aware of the condition of the "U" dorm shower, and that he or she knew or should have known of plaintiff's condition given the findings identified in the May 25, 2005 "Disability Program Verification Form," the court cannot make that finding as a matter of law. It is at least possible that whomever transferred plaintiff was simply misinformed about the "U" dorm or about plaintiff's condition; if a finder a fact found either scenario to be true, the a finding of "deliberate indifference" would be precluded.

Further, plaintiff has not established as a matter of law that any of the officers he alleges he told about his problems with showering in "U" dorm prior to his first fall had knowledge that plaintiff's being forced to shower in the "U" dorm shower was substantially likely to lead to a violation of rights arising under the ADA. First, there is no record of plaintiff telling anyone about his difficulties with showering in "U" dorm before his first fall despite the fact that plaintiff could have utilized the CDCR grievance process or the process for requesting an ADA accommodation. Second, plaintiff's statements are self-serving which, at least minimally, calls into question the truth of the statements. Finally, simply because a prisoner informs a correctional officer of what he perceives to be his medical condition does not necessarily mean the officer is put on notice of his actual condition. Correctional

6

officers are free to, and must, consider information provided by inmates in conjunction with information obtained by their own senses and from medical personnel. There is no indication that the correctional officers plaintiff alleged he informed about his condition did not do that.

The grievance filed December 27, 2006, after plaintiff's first fall, is too vague to put defendants on notice as a matter of law that plaintiff's being forced to shower in "U dorm" was at least substantially likely to result in a violation of the ADA. As indicated above, in the grievance, plaintiff indicated that he tripped over the threshold in the shower, needed medical attention and he requested that the threshold be "jack-hammered." But he did not indicate that he could not clear the threshold in the future so that the reader of the grievance would not have construed plaintiff's fall as more accident than something that was substantially likely to recur. The court assumes that the person that reviewed plaintiff's grievance, Dr. Andreasen, either did not review the May 25, 2005 "Disability Program Verification Form" or ignored it. While either fact might constitute evidence that Andreasen was deliberately indifferent to plaintiff's need for an ADA accommodation, the court cannot conclude that such is the case as a matter of law.

As indicated above, the appeal of that grievance was submitted by plaintiff on March 13, 2007 and plaintiff was transferred back to "Y" dorm that same month. Nothing suggests the apparently minimal delay in transferring plaintiff back to "Y" dorm could be construed as a failure to act by the person to whom the grievance was submitted and therefore deliberate indifference by that employee has not been established.

In sum, while there is significant and substantial evidence supporting all elements of plaintiff's Title II, ADA claims against defendants, plaintiff has not met his burden of establishing that there is no genuine issue of fact as to whether defendants knew plaintiff's being forced to shower in the "U" dorm shower was substantially likely to result in a violation of Title II and they were at least deliberately indifferent to that likelihood. Therefore, the court will recommend that plaintiff's motion for summary judgment be denied.

III. Analysis

As with plaintiff's motion for summary judgment, whether defendants' motion should be granted turns on whether there is any genuine factual dispute that defendants, at some point, were on notice that plaintiff's being forced to use the "U" dorm shower was at least substantially likely to result in a violation of plaintiff's rights under the ADA. At this point, none

of the other elements of plaintiff's ADA claim appear to be disputed.[5] If it cannot be disputed that defendants never had such notice, they are entitled to summary judgment. However, as with plaintiff's motion, the court finds that there are genuine issues of fact with respect to whether there was sufficient notice.

In defendants' motion, defendants fail to point to anything indicating who made the decision to transfer plaintiff to the "U" dorm from "Y" dorm or why. Again, there is evidence before the court suggesting that a correctional officer with the authority to transfer plaintiff would be aware of the condition of the "U" dorm shower, and that he or she knew or should have known of plaintiff's condition – especially that he required a "wheelchair accessible path of travel" – given the findings identified in the May 25, 2005 "Disability Program Verification Form."

Also, as indicated above, plaintiff points to evidence indicating that shortly after being moved to "U" dorm he advised certain correctional officers that the six-inch threshold blocking the "U" dorm shower posed a problem for plaintiff because he could not traverse the obstruction in a wheelchair. Defendants point to evidence calling into question whether that actually occurred, but the nature of the evidence is not such that the court can find as a matter of law that plaintiff did not complain as he indicates he did. Defendants also assert plaintiff's self-serving and uncorroborated assertion that he immediately advised certain officers of his trouble with the "U" dorm shower is not sufficient to preclude summary judgment. While plaintiff's assertion is self-serving and not meaningfully corroborated by other testimony, it is not so unbelievable to cause the court to depart from the general rule that upon consideration of a motion for summary judgment, the evidence presented by the opposing party is to be believed. See Anderson, 477 U.S. at 255. See also Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996) (plaintiff's deposition testimony not sufficient to preclude summary judgment where it

---

[5] Of course, other elements might be disputed at trial.

was self-serving, uncorroborated, it contradicted plaintiff's prior sworn statements and medical evidence.)

IV. Conclusion

In light of the foregoing, the court will recommend that defendants' motion for summary judgment be denied.[6]

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants's March 13, 2012 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 20, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
bark1160.57(4)

---

[6] The court notes that plaintiff makes a number of objections to evidence offered by defendants.  In light of the foregoing, the court need not address the objections.